NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JESSICA BERNARD,<br><br>*Plaintiff,*<br><br>v.<br><br>JACK MARGOSSIAN, COMPORT CONSULTING CORPORATION, COMPORTSECURE, HP, INC., HEWLETT PACKARD ENTERPRISE (HPE), INSURANCE PLACEHOLDER,<br><br>*Defendants.* | Civil Action No. 25-10346<br><br>**OPINION**<br><br>June 30, 2026 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court upon Defendants HP Inc. ("HP"), Hewlett Packard Enterprise ("HPE"), and Comport Consulting Corp. and Jack Margossian's (collectively, "Comport Defendants") Motions to Dismiss the Fifth Amended Complaint, (ECF 55, "FAC"), of *pro se* Plaintiff Jessica Bernard (collectively, "Motions"). (ECF 63, "HP's Motion" or "HP Mot."; ECF 64, "HPE's Motion" or "HPE Mot."; ECF 65, "Comport's Motion" or "Comport Mot.") Plaintiff opposed Defendants' Motions in a consolidated filing. (ECF 70, "Opposition" or "Opp.") Defendants filed separate replies. (ECF 75, "HP Reply"; ECF 78, "HPE Reply"; ECF 79, "Comport Reply.") The Court has decided the Motions upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, HP's Motion is **GRANTED**; HPE's Motion is **GRANTED**; and Comport's Motion is **GRANTED IN PART**.

1

## I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Plaintiff Jessica Bernard is a New Jersey resident who brings this action stemming from a pattern of alleged sexual assault and workplace harassment by Comport Defendants.  (FAC ¶¶ 3, 46.)

### A.  February 2023 Onboarding

Comport Consulting Corp. ("Comport") is a New Jersey corporation that is in the business of enterprise technology sales, managed services, and software solutions.  (*Id.* ¶ 47.)  Defendant Jack Margossian ("Margossian") is a resident of New Jersey and the CEO of Comport.  (*Id.* ¶ 49.)  On February 27, 2023, Plaintiff joined Comport as a sales executive and account manager.  (*Id.* ¶¶ 70-74.)  Prior to her official start date, Plaintiff was invited to and attended Comport's 40th Anniversary Sales Kick-Off ("SKO") during the week of February 14, 2023.  (*Id.* ¶¶ 76-78.)  Plaintiff alleges that Margossian's inappropriate behavior began during SKO week, where he provided her with his personal cell phone number, photographed her taking a selfie with co-workers and texted it to her, and encouraged her to "play the game" after observing another executive touch Plaintiff during a "lighted-hearted social exchange."  (*Id.* ¶¶ 77-84.)  From February to mid-May 2023, Plaintiff and Margossian routinely communicated via text messages, which Plaintiff describes as "professional" in tone.  (*Id.* ¶¶ 109, 111.)  During this time, Plaintiff maintains that her work performance was "strong, measurable, and well-documented."  (*Id.* ¶¶ 116-20.)

---

[1] When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom.  *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).  The Court also considers any "document integral to or explicitly relied upon in the complaint."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  The Court construes pro se filings liberally.  *See Marcinek v. Comm'r*, 467 F. App'x 153, 154 (3d Cir. 2012) (holding that courts are "under an obligation to liberally construe the submissions of a pro se litigant").

### B.  May 2023 Sexual Assault

Plaintiff alleges that Margossian invited her to play a full round of golf with him, CTO Erik Krucker, and VP of Sales Joe Zinna ("Zinna") on May 11, 2023.  (*Id.* ¶¶ 121-33.)  When Plaintiff arrived at the golf course, she found herself alone with Margossian, and Margossian informed her that he told his wife that Plaintiff had "asked him to play alone." (*Id.* ¶ 137).  As the round progressed, Plaintiff claims that their conversation devolved into "lewd jokes, inappropriate stories, and referencing his own body in ways that made [Plaintiff] visibly uncomfortable."  (*Id.* ¶¶ 139-41.)  After the round concluded around 11:30 am, Plaintiff accepted an offer from Margossian to drive her home.  (*Id.* ¶¶ 145-46.)  When they arrived at Plaintiff's home, Plaintiff alleges that Margossian asked to come inside, ignored Plaintiff's refusal, and walked through her front door uninvited.  (*Id.* ¶¶ 147-50.)  Margossian then forcefully shoved Plaintiff onto the couch and raped her as Plaintiff repeatedly said "No."  (*Id.* ¶¶ 151-62.)

Plaintiff also alleges that Margossian left her home and called her later that afternoon to tell her: "[Zinna] wants to fire you.  But I'll fix it.  Let's talk tomorrow.  If you want your job, come to the Shore tomorrow night.  I'm busy all weekend.  That's my only free time.  Send me the pictures you took on the golf course."  (*Id.* ¶ 166.)  Over the next few weeks, Plaintiff alleges that she received inappropriate and coercive calls and text messages from Margossian, where Margossian often asked her for sexual favors and pictures of herself.  (*Id.* ¶¶ 177-98, 202.)

### C.  June 2023 Demotion and Termination

After the alleged assault, Comport began questioning Plaintiff's work performance.  (*Id.* ¶¶ 217-18.)  On May 22, 2023, Comport's Account Executive Brian Roth ("Roth") came to Plaintiff's personal residence uninvited with an "aggressive and abusive demeanor," claiming he was "in the area."  (*Id.* ¶ 207).  Plaintiff reported the incident to Human Resources Administrator

3

Nancy Pizza ("Pizza") twice, indicating that she "felt unsafe." (*Id.* ¶¶ 208, 226.) Each time, Pizza told Plaintiff that she would "talk to [Margossian]." (*Id.*)

The next day, Plaintiff was invited to a Microsoft Teams meeting with the subject line "Your Employment at Comport." (*Id.* ¶ 209.) On May 25, Plaintiff was asked to sign a new contract accepting a demotion that would cause Plaintiff to lose access to commissions, clients, and vendor contacts. (*Id.* ¶¶ 218-19.) Plaintiff refused to sign. (*Id.*) By June, Plaintiff had lost access to her email, laptop, clients, commissions, and accounts, and was allowed to speak to only Pizza or Margossian until she signed the demotion. (*Id.* ¶ 252.) During this time, Margossian repeatedly contacted Plaintiff, asking for sexual favors and implying that he could help Plaintiff keep her job if she complied. (*Id.* ¶¶ 228-62.) These communications sometimes resulted in Plaintiff reluctantly attempting to perform sexual acts on Margossian. (*Id.* ¶¶ 257, 259, 262.)

On June 20, 2023, Plaintiff signed the demotion, which became effective on June 26. (*Id.* ¶ 263.) After a few days of communications between Plaintiff, Margossian, and other Comport employees, Plaintiff was terminated for "poor performance" on June 30. Plaintiff alleges that Comport lacks internal memoranda, HR write-ups, and formal performance documentation to justify her termination. (*Id.* ¶¶ 268-86.)

### D. HPE and HP Connection

Defendant HPE is a Delaware corporation and "one of Comport's largest strategic partners." (*Id.* ¶ 52.) Comport is a Platinum Partner of HPE and Margossian serves on the Partner Advisory Board. (*Id.*) Plaintiff attended HPE training sessions and earned an HPE sales certification. (*Id.* ¶¶ 99, 119.) Additionally, Plaintiff's father was a former HPE executive who referred Plaintiff to Comport. (*Id.* ¶ 2.) On November 4, 2024, Plaintiff submitted a complaint to HPE's Ethics and Compliance Office for "sexual assault, stalking, and retaliation by Advisory

4

Board member Jack Margossian." (*Id.* ¶¶ 52, 56.) HPE acknowledged receipt of Plaintiff's complaint but did not take action against Comport or Margossian. (*Id.* ¶¶ 58-60.)

According to Comport's sales contracts, Defendant HP is a company that falls under the umbrella of HPE. (*Id.* ¶¶ 53, 65.) Plaintiff alleges that HP and HPE share compliance obligations under the Partner Code of Conduct. (*Id.*)

### E. EEOC and Court Complaints

Plaintiff filed a Charge with the Equal Employment Opportunity Commission ("EEOC") through counsel on September 29, 2023, which was dismissed on July 3, 2024. (ECF 1 ¶¶ 1-2.) Following the EEOC dismissal, Plaintiff filed suit against Defendants in the Superior Court of New Jersey through different counsel on September 26, 2024, which was dismissed without prejudice on January 15, 2025. (*Id.* ¶¶ 3-6.) Over a period of two years, Plaintiff hired five attorneys across four law firms—all withdrew from her case after allegedly speaking with Comport Defendants' legal counsel. (FAC ¶¶ 287-336.)

On May 9, 2025, *pro se* Plaintiff filed a new complaint in the Superior Court of New Jersey. (ECF 1 ¶ 7.) Plaintiff alleged claims of quid pro quo sexual harassment, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). (*Id.* ¶ 9.) On June 3, 2025, Plaintiff filed an amended complaint setting forth the same causes of action. (*Id.* ¶¶ 10-11.) On June 12, 2025, Defendants removed this action from state court. (ECF 1.) After removal, Plaintiff filed four amended complaints on June 26, July 2, July 7, and July 14, 2025. (ECF 8; ECF 14; ECF 18; ECF 25.)

On August 22, 2025, with leave from this Court, Plaintiff filed the operative Fifth Amended Complaint. (FAC.) Plaintiff alleges sex-based discrimination and sexual harassment, retaliation for protected activity, and constructive discharge in violation of Title VII, the New Jersey Law

Against Discrimination, N.J.S.A. § 10:5-1, *et seq.* ("NJLAD"), and the New Jersey Conscientious Employee Protection Act, N.J.S.A. § 34:19-1, *et seq.* ("NJCEPA") (Counts I-VI); fraud and misrepresentation (Count VII); theft and misappropriation of intellectual property and trade secrets in violation of the New Jersey Trade Secrets Act, N.J.S.A. § 56:15-1 to -9, ("NJTSA") (Count VIII); intentional infliction of emotional distress ("IIED") (Count IX); negligent hiring, supervision, and retention (Count X); civil conspiracy to commit fraud and obstruct justice (Count XI); coercion and extortion (Count XII); breach of contract (Count XIII); defamation and damage to professional reputation (Count XIV); and tortious interference with prospective economic advantage (Count XV). (*Id.* at 48-57.)

On October 10, 2025, Defendants HP, HPE, and the Comport Defendants filed Motions to Dismiss Plaintiff's FAC. (HP Mot.; HPE Mot.; Comport Mot.) On October 28, 2025, Plaintiff filed her Opposition. (Opp.) On October 29, 2025, HP replied. (HP Reply.) On November 3, 2025, HPE and the Comport Defendants replied. (HPE Reply; Comport Reply.) On November 5, 2025, without leave from the Court, Plaintiff filed a consolidated sur-reply.[2] (ECF 80.)

## II.    LEGAL STANDARD

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) permits courts to dismiss actions for lack of subject matter jurisdiction. Under Article III, federal courts have jurisdiction to hear "cases" and "controversies." *Lutter v. JNESO*, 86 F.4th 111, 123 (3d Cir. 2023). Thus, for a plaintiff to bring an action in federal court, they must have a "personal stake," in a "case" or "controversy." *Raines v. Byrd*, 521 U.S. 811, 819 (1997). This is known as Article III standing. "A motion to dismiss

---

[2] Pursuant to Local Civil Rule 7.1(d)(6), the Court did not consider Plaintiff's sur-reply.

for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

Rule 12(b)(1) motions may challenge subject matter jurisdiction based upon the face of the complaint or its underlying facts. *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009); *Pittman v. Metuchen Police Dept.*, No. 08-2373, 2009 WL 3207854, at *1 (D.N.J. Sept. 29, 2009). A facial attack questions the sufficiency of the pleading and requires the trial court to accept the allegations in the complaint as true. *Common Cause of Pa.*, 558 F.3d at 257; *Pittman*, 2009 WL 3207854, at *1. A factual attack, by contrast, calls upon the court to weigh the evidence. *Pittman*, 2009 WL 3207854, at *1.

### B.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

When a plaintiff files a complaint *pro se*, their "pleadings must be liberally construed." *Alexander v. Gennarini*, 144 F. App'x 924, 2005 WL 1805621, at *2 (3d Cir. 2005). The

arguments of *pro se* litigants "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the Plaintiff.  *Phillips v. Ctny. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  However, when a Plaintiff alleges legal conclusions disguised as factual assertions, or factual assertions that are otherwise unreasonable, the court is under no obligation to accept such allegations as true.  *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007) (holding a court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations").  If, after reviewing the pleadings, a court determines that a plaintiff failed to establish a claim and construed all reasonable facts and inferences in favor of the plaintiff, the court may dismiss the complaint for failure to state a claim upon which relief can be granted.  *Stringer v. Bureau of Prisons, Federal Agency*, 145 F. App'x 751, 2005 WL 2009019, at *1 (3d Cir. 2005).

### III.    ANALYSIS

#### A.  Defendants HP and HPE

##### 1.  Article III Standing

The Court first addresses Plaintiff's standing with respect to her claims against Defendants HP and HPE.  HP properly brought a Rule 12(b)(1) challenge, arguing that this Court lacks subject matter jurisdiction to hear Plaintiff's claims against HP even if all the facts pled in the FAC are true.  (ECF 63-1, "HP Br." at 9-11).  HP presents a facial attack, and therefore this Court presumes the truth of Plaintiff's allegations under the Rule 12(b)(6) standard.  *See Common Cause of Pa.*, 558 F.3d at 257; *Saint-Jean v. Ctny. of Bergen*, 509 F. Supp. 3d 87, 97 (D.N.J. 2020) ("[A] facial motion is handled much like a 12(b)(6) motion, and allegations in the complaint are accepted as

true."). HPE did not raise any claims under Rule 12(b)(1). (*See* ECF 64-1, "HPE Br.")  However, this Court is "required to raise issues of standing *sua sponte* if such issues exist." *McCray v. Fid. Nat. Title Ins. Co.*, 682 F.3d 229, 243 n.13 (3d Cir. 2012).

To establish Article III standing, a plaintiff must allege they suffered "(1) a concrete, particularized, and actual or imminent injury, (2) that was likely caused by the defendant, and (3) would likely be redressable by a favorable judicial decision." *Morales v. Commonwealth Fin. Sys., Inc.*, No. 22-3388, 2023 WL 8111458, at *2 (3d Cir. 2023) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). "If 'the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.'" *TransUnion LLC*, 594 U.S. at 423 (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)). The second prong "requires a causal connection between the injury-in-fact and a defendant's conduct." *Lutter*, 86 F.4th at 127.

It is undisputed that Plaintiff alleged a plausible injury-in-fact. Rather, at issue here is causation. HP argues that the Comport Defendants caused Plaintiff's alleged injuries, not HP, and therefore this Court does not have jurisdiction to hear Plaintiff's claims against HP. (HP Br. at 9-11.) HPE argues that it did not cause Plaintiff's alleged harm, and thus Plaintiff's claims against HPE must fail. (HPE Br. at 12-15.) Plaintiff claims HP and HPE failed to investigate her ethics complaint about the Comport Defendants and disassociate from Comport after receiving notice of her complaint. (Opp. at 5-6.) Plaintiff argues such "inaction perpetuated the misconduct" and "directly enabled the continuation of abuse." (*Id.*; FAC ¶ 52.)

The Court finds Plaintiff has failed to establish that Defendants HP and HPE "likely caused" any of her alleged injuries. *Morales*, 2023 WL 8111458, at *2. In a poignant preliminary statement, Plaintiff herself states:

> I am filing this Complaint prose as a survivor of workplace sexual assault, stalking, coercion, retaliation, contract fraud, and professional destruction.  Every harm inflicted upon me-every act of grooming, exploitation, sabotage, and retaliation- stemmed from my gender and my refusal to submit to illegal and degrading demands-all carried out under the leadership of Jack Margossian, CEO of Comport Consulting Corp., with the active support of his company's internal systems, legal counsel, and HR apparatus.

(FAC ¶ 1.)  Plaintiff's statement is a clear allegation of causal connection between her injuries and the Comport Defendants, but not HP and HPE.  To be sure, Plaintiff submitted her complaint through HPE's Integrity Portal on November 4, 2024—more than a year after the Comport Defendants' alleged sex-based discrimination, sexual harassment, and retaliation.  (*Id.* ¶ 56.) Regardless of HP and HPE's inaction in 2024, Plaintiff's alleged injuries are still "fairly traceable" only to "the independent action" of the Comport Defendants in 2023, namely Margossian's sexual misconduct—culminating in Plaintiff's alleged retaliatory termination in June 2023.  *See Lutter*, 86 F.4th at 127.  Because the FAC does not plausibly allege a causal connection between Plaintiff's injuries and Defendants HP and HPE, Plaintiff fails the second prong of Article III standing with respect to HP and HPE.

HP and HPE seek dismissal with prejudice.  (HP Br. at 20; HPE Br. at 15.)  A court should consider whether leave to amend should be granted.  *See Free Speech Coal., Inc. v. Att'y Gen. of U.S.*, 677 F.3d 519, 545 (3d Cir. 2012) ("Leave to amend should be freely given when justice so requires, including for a curative amendment unless such an amendment would be inequitable or futile.")  Here, after Plaintiff filed four amended complaints, the Court granted Plaintiff leave to file her Fifth Amended Complaint and instructed her to "set forth all claims she wishes to proceed with in this matter."  (ECF 54 at 1.)  Given the remaining deficiencies that Plaintiff cannot cure, the Court finds further amendment of Plaintiff's FAC would be futile.  Accordingly, HP and HPE's Motions to Dismiss are **GRANTED** and Plaintiff's FAC in its entirety is **DISMISSED** with

prejudice as to HP and HPE due to lack of subject matter jurisdiction.[3]

## B. Comport Defendants

### 1. Title VII, NJLAD, and NJCEPA Claims (Counts I-VI)

In support of their Motion, the Comport Defendants argue: (1) Plaintiff's NJCEPA claim is barred by the applicable one-year statute of limitation; (2) Plaintiff's claims asserting individual liability against Margossian for violating Title VII and NJLAD should be dismissed because an individual cannot be held liable under those statutes; and (3) Plaintiff's constructive discharge claims should be dismissed because she did not resign from Comport. (ECF 65-1, "Comport Br." at 24-30.)

#### a. Statute of Limitations

In Counts V-VI, Plaintiff alleges that the Comport Defendants violated NJCEPA. (FAC at 49-51.) A plaintiff asserting a NJCEPA violation "may, within one year, institute a civil action in a court of competent jurisdiction." N.J.S.A. § 34:19-5. The one-year statute of limitations "begins to run from the final act of retaliation when there is a continued course of retaliatory conduct by the employer." *Green v. Jersey City Bd. of Educ.*, 177 N.J. 434, 437-38 (2003). Termination is a final act of retaliation. *Alderiso v. Med. Ctr. of Ocean Cnty., Inc.*, 167 N.J. 191, 201 (2001) ("In interpreting CEPA in accordance with its plain language, we are satisfied that the date of discharge represents the appropriate accrual date.").

---

[3] HP and HPE also argue that Plaintiff's FAC is an impermissible "shotgun pleading" under Fed. R. Civ. P. 8(a)(2) and that Plaintiff fails to plead any plausible claim against HP and HPE under Rule 12(b)(6). (HP Mot.; HPE Mot.) Because the FAC is dismissed under Rule 12(b)(1), the Court refrains from engaging in Rules 8(a)(2) and 12(b)(6) analyses. *See Dickerson v. Bank of Am., N.A.*, No. 12-3922, 2013 WL 1163483, at *1 (D.N.J. Mar. 19, 2013) ("When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot.").

Here, Plaintiff filed her first suit in state court in September 2024, more than one year after the Comport Defendants' alleged final act of retaliation—Plaintiff's June 2023 termination. (*See* ECF 1 ¶¶ 3-6.) Plaintiff argues that equitable tolling of the statute of limitations is warranted due to the Comport Defendants' intimidation, concealment, and manipulation. (Opp. at 8.) However, Plaintiff does not offer case law that supports her argument and does not allege that she was unaware of the Comport Defendants' alleged retaliatory conduct on her discharge date. In fact, Plaintiff alleges that she disagreed with HR's rationale of "poor performance" on June 30, 2023, and believed she "was the only person demoted, the only person cut off from systems, and the only person fired—and all because [she is] a woman." (FAC ¶ 279.)

The Court finds that Plaintiff had sufficient awareness of the scope of the Comport Defendants' alleged retaliatory conduct on the date of her termination, June 30, 2023, and therefore equitable tolling of NJCEPA's one-year statute of limitations is not warranted. *See Jones v. Jersey City Med. Ctr.*, 20 F. Supp. 2d 770, 773 (D.N.J. 1998) ("Fairness to the defendant is one of the principal considerations underlying the enactment of statutes of limitations. To impose equity as a bar to the statute of limitations here would strain the boundaries of equity as well as impose hardship on the defendants." (citing *Lopez v. Swyer,* 62 N.J. 267, 274 (1973))). Because Plaintiff filed her first state court action on September 26, 2024, and this action on May 9, 2025, the Court dismisses Plaintiff's NJCEPA claims with prejudice as further amendment of the FAC would be futile under the statute of limitations. Counts V-VI of the FAC are **DISMISSED** with prejudice as barred by the one-year statute of limitations.

### b.  *Sex-based Discrimination, Sexual Harassment, and Retaliation*

In Counts I-II and IV-V, Plaintiff alleges sex-based discrimination, sexual harassment, and retaliation in violation of Title VII and NJLAD. (FAC at 48-51.) With respect to these claims,

12

the Comport Defendants seek partial dismissal.  (Comport Br.)  They do not argue for, and therefore waive their right to seek, *see* Fed. R. Civ. P. 12(g)(2),  dismissal of Plaintiff's Title VII and NJLAD claims in Counts I-II and IV-V as to Defendant Comport.  Therefore, the Court addresses only Defendant Margossian in this subpart.

Under Title VII and NJLAD, employers are prohibited from discriminating based on an employee's sex and from retaliating against an employee for complaining about, or reporting, sex-based discrimination or harassment.  *See* 42 U.S.C. § 2000e–2(a), 3(a); N.J.S.A. § 10:5-12. Margossian argues that he was not Plaintiff's employer and therefore cannot be held liable. (Comport Br. at 24-27.)  Plaintiff concedes that Comport, not Margossian, was her employer but argues that Margossian may be held liable under Title VII and NJLAD for aiding and abetting Comport's alleged violations.  (*See* Compl. ¶ 47; Opp. at 8.)  However, Margossian correctly notes that Plaintiff does not allege an aiding and abetting claim in the FAC.  (Comport Reply at 6.)

Under Title VII, an "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person."  § 2000e(b). "Third Circuit law is clear that individual persons are not personally liable under Title VII." *Mann v. Est. of Meyers*, 61 F. Supp. 3d 508, 527 (D.N.J. 2014) (collecting cases); *see also Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1077 (3d Cir. 1996) (affirming the dismissal of a former employee's supervisor as a defendant in a Title VII suit).  Under NJLAD, an "employer" is defined as "one or more individuals, partnerships, associations, organizations, labor organizations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, and fiduciaries."  N.J.S.A. § 10:5-5.  The Supreme Court of New Jersey held that "an individual supervisor" is not liable under NJLAD outside of the aiding and abetting provision.  *Tarr v. Ciasulli*, 181 N.J. 70, 83 (2004).

13

The Court finds that Margossian is an "individual person" and "individual supervisor" within the meaning of Title VII and NJLAD. Although Zinna was Plaintiff's "direct supervisor," Margossian supervised "Plaintiff's hiring, compensation, sales assignments, account access, commissions, and ultimate termination." (Compl. ¶¶ 49, 210.) Therefore, Plaintiff fails to plead a valid cause of action as to Margossian. Because Plaintiff's further amendment of her sex-based discrimination, sexual harassment, and retaliation claims against Margossian would be futile under governing case law, Counts I-II and IV-V of the FAC are **DISMISSED** with prejudice as to him.

### c. *Constructive Discharge*

In Counts III and VI, Plaintiff alleges constructive discharge in violation of Title VII, NJLAD, and NJCEPA. (FAC at 49-51.) Plaintiff argues that her "coercive termination" by the Comport Defendants constitutes a constructive discharge. (Opp. at 8.) But the case law is clear on this issue: a constructive discharge claim requires a resignation, and it is not applicable where there is a termination. To prove a constructive discharge claim under Title VII, a plaintiff "must show that 'the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'" *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013) (quoting *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1084 (3d Cir. 1996)); *Shepherd v. Hunterdon Dev. Ctr.*, 174 N.J. 1, 27-28 (2002) (same for NJLAD); *Donelson v. DuPont Chambers Works*, 206 N.J. 243, 257 (2011) (same for NJCEPA).

The Court finds that the Comport Defendants terminated Plaintiff and therefore Plaintiff cannot establish a cause of action for constructive discharge. Because Plaintiff's further amendment of her constructive discharge claims against the Comport Defendants would be futile under governing case law, Counts III and VI of the FAC are **DISMISSED** with prejudice.

### 2. <u>Remaining State Law Claims</u>

### a. NJTSA (Counts VII-VIII)

In Counts VII-VIII, Plaintiff alleges that the Comport Defendants stole and misappropriated "her proprietary lead lists, industry contacts, and portions of her family's generational lead list" in violation of NJTSA.[4] (FAC at 51-53.) NJTSA prohibits the actual or threatened misappropriation of a "trade secret." N.J.S.A. § 56:15-3. A "trade secret" is "'information' that (1) '[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use,' and (2) that the holder reasonably endeavors to maintain as confidential." *Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*, 157 F. Supp. 3d 407, 423 (D.N.J. 2016) (quoting § 56:15-2). "In any trade secret case, the Court must first determine whether there exists, in fact, a trade secret." *Id.* at 424.

Here, the Comport Defendants argue that there are no trade secrets at issue because Plaintiff fails to "allege that she made any efforts to keep [her lead lists and industry contacts] confidential before or at the time when she commenced her employment at Comport." (Comport Br. at 34-35.) In response, Plaintiff argues that Comport accessed her prospective client databases and exploited them for commercial gain without her consent. (Opp. at 9.) The Comport Defendants maintain that Plaintiff voluntarily shared her client lists and contacts. (Comport Reply at 11.)

The Court finds that Plaintiff does not plausibly allege she held "trade secrets" within the meaning of NJTSA and therefore has failed to establish a cause of action. While Plaintiff concedes that she shared her client information with Comport because she thought she could build a career at Comport, (FAC at 53), Plaintiff does not allege any facts that show she "endeavor[ed] to

---

[4] Although Plaintiff labeled Count VII as "Fraud and Misrepresentation," Plaintiff asserts identical facts and cites NJTSA in both Counts VII and VIII. (*See* FAC at 51-53.) The Court therefore treats such counts as duplicative NJTSA claims.

15

maintain [such information] as confidential." *Baxter Healthcare Corp.*, 157 F. Supp. 3d at 423.

Accordingly, Plaintiff fails to plead a valid cause of action under NJTSA, and Counts VII-VIII of

the FAC are **DISMISSED** with prejudice.

### b.  IIED (Count IX)

In Count IX, Plaintiff alleges that she suffered "severe emotional distress" from the

Comport Defendants' "extreme, outrageous, and intentional" misconduct.  (FAC at 53.)  Here, the

Comport Defendants seek partial dismissal.  (Comport Br. at 33.)  They do not argue for, and

therefore waive their right to seek, *see* Fed. R. Civ. P. 12(g)(2),  dismissal of Plaintiff's IIED claim

as to Defendant Margossian.   Therefore, the Court addresses only Defendant Comport in this

subpart.

Comport argues that Plaintiff's demotion and termination do not amount to extreme and

outrageous conduct by the company.  (Comport Br. at 32-33.)  Plaintiff argues that Comport

defamed her and tampered with her life in a way that "created ongoing anxiety and reputation

injury far beyond ordinary workplace harm."  (Opp. at 9.)  To establish a cause of action for

intentional infliction of emotional distress in New Jersey, a plaintiff must show:

> (1) the defendant acted intentionally [or recklessly]; (2) the defendant's conduct
> was so outrageous in character and so extreme in degree, as to go beyond all
> possible bounds of decency, and to be regarded as atrocious, and utterly intolerable
> in a civilized community; (3) that the conduct proximately caused the plaintiff
> emotional distress; and (4) the emotional distress was so severe that no reasonable
> person could be expected to endure it.

*Cagno v. Ivery*, No. 19-20384, 2022 WL 17887231, at *8 (D.N.J. Dec. 23, 2022) (citing *Segal v.*

*Lynch*, 993 A.2d 1229, 1239 (N.J. Super. Ct. App. Div. 2010)).

The Court finds that Plaintiff fails to plausibly allege each element of the IIED claim

against Comport.  While the FAC contains Comport-related facts untethered to Margossian's

alleged sexual misconduct—attempting to demote Plaintiff, terminating her, and an HR response

16

to Plaintiff's report of Roth's unannounced visit to her home—such facts do not amount to extreme and outrageous conduct. *See Griffin v. Tops Appliance City, Inc.*, 337 N.J. Super. 15, 23 (App. Div. 2001) ("Except for . . . aggravated discriminatory conduct . . . 'it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress.'" (quoting *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988))).  Therefore, Plaintiff fails to plead a valid cause of action for IIED against Comport, and Count XI of the FAC is **DISMISSED** with prejudice as to Comport.

### c. *Negligent Hiring, Supervision, and Retention (Count X)*

In Count X, Plaintiff alleges that Comport "negligently hired, retained, and failed to supervise" Margossian, Roth, legal personnel, and "other executives who engaged in retaliation." (FAC at 53-54.)  The Comport Defendants argue that Comport did not and had no reason to know about Margossian's alleged "risk to female employees" and Plaintiff failed to plead any non-conclusionary facts related to Roth, legal personnel, and other executives.  (*See* Comport Br. at 37-38.)  Plaintiff does not offer a response.  (*See* Opp.)

To plead a cause of action for negligent hiring, Plaintiff must allege (1) "the employer knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons" and (2) the employer's negligence in hiring or supervising the employee resulted in the dangerous attribute proximately causing plaintiff's injury. *Vergara v. Keyes*, No. 20-01460, 2020 WL 7778080, at *11 (D.N.J. Dec. 30, 2020) (quoting *G.A.-H. v. K.G.G.*, 210 A.3d 907, 916 (N.J. 2019)).  "To be found liable for negligent supervision or [retention], the plaintiff must satisfy what

17

is essentially the same standard, but framed in terms of supervision or [retention]." *Id.* (quoting *G.A.-H*, 210 A.3d at 916).

The Court finds that Plaintiff fails to allege any plausible facts specific to Comport's knowledge or reason to know of Margossian's "particular unfitness, incompetence or dangerous attribute" that allegedly caused Plaintiff's injuries. *Id.* Rather, Plaintiff offers conclusionary allegations that Comport knew or willfully ignored "Margossian's inappropriate behavior, history of coercion, and misuse of power." (FAC at 54.) Plaintiff also concedes that she "tried" to report Margossian's behavior to Comport during her employment but "struggled to even speak the words." (*Id.* ¶ 226.) Additionally, the Court finds Plaintiff fails to allege any facts that constitute "particular unfitness, incompetence or dangerous attributes" of Roth, Comport's legal personnel, and other executives, or how those attributes caused Plaintiff's alleged injuries. *Vergara*, 2020 WL 7778080, at *11. While Plaintiff does allege that Roth "scared" her and she felt "unsafe" when he visited her home uninvited with an "aggressive and abusive" demeanor, Plaintiff fails to identify any injury Roth specifically caused and merely asserts that the interaction ""marked the beginning of intensified retaliation and intimidation." (FAC ¶¶ 207-08, 226.) Such conclusionary allegations cannot survive a motion to dismiss.

Because Plaintiff fails to plead a valid cause of action against Comport for negligent hiring, supervision, and retention, Count X of the FAC is **DISMISSED** with prejudice.

### d. Civil Conspiracy to Commit Fraud and Obstruct Justice (Count XI)

In Count XI, Plaintiff alleges that the Comport Defendants "acted in concert to conceal wrongdoing, suppress evidence, and obstruct legal recourse." (FAC at 54.) More specifically, she alleges they manipulated her metadata and Cellebrite phone extractions "to frustrate the administration of justice and silence a whistleblower." (*Id.*) The Comport Defendants argue that

18

Plaintiff fails to plead a viable claim for fraud, and in the absence of an underlying tort, Plaintiff cannot plead a civil conspiracy claim as a matter of law. (Comport Br. at 36-37.) Plaintiff argues that her metadata was "accessed and exploited," which constitutes fraud. (Opp. at 9.)

Under New Jersey law, civil conspiracy has four elements: "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus*, 331 F.3d 406, 414 (3d Cir. 2003); *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005). "In addition, one of the parties must commit some act that is itself a tort in pursuance of the agreement." *Delzotti v. Morris*, No. 14-7223, 2015 WL 5306215, at *7 (D.N.J. Sept. 10, 2015) (internal citations and quotations omitted). To establish claim for fraudulent misrepresentation, a plaintiff must meet five requirements: (1) material misrepresentation or omission of presently existing or past fact, (2) knowledge or belief by the defendant of its falsity, (3) intention that other person rely on it, (4) reasonable reliance thereon by other person, and (5) resulting damages. *Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 315-16 (D.N.J. Jan. 17, 2012).

The Court finds that Plaintiff fails to establish a cause of action for civil conspiracy and fraud. The FAC is devoid of any non-conclusionary allegations of an agreement; Comport's nefarious purpose; and a knowing material misrepresentation Comport intended Plaintiff to rely on (and Plaintiff in fact reasonably relied). Because the underlying fraud claim fails, Plaintiff's civil conspiracy claim fails in concert. Accordingly, Count XI is **DISMISSED** with prejudice.

### e. Coercion and Extortion (Count XII)

In Count XII, Plaintiff alleges that Defendant Margossian coerced and extorted Plaintiff following the alleged sexual assault "by demanding degrading sexual compliance under threat of job loss." (FAC at 54-55.) Plaintiff claims that the New Jersey crimes of theft by extortion,

19

N.J.S.A. § 2C:20-5, and coercion, § 2C:13-5, "give rise to civil liability under New Jersey tort law." (*Id.*)  Yet Plaintiff offers no legal basis for her assertions.  In fact, "there is no civil cause of action for theft by extortion," *Dello Russo v. Nagel*, 358 N.J. Super. 254, 267 (App. Div. 2003), and § 2C:13-5 is also devoid a civil remedy.  Therefore, Plaintiff fails to plead a valid cause of action for coercion and extortion, and Count XII is **DISMISSED** with prejudice.

### f.  Breach of Contract (Count XIII)

In Count XIII, Plaintiff alleges that the Comport Defendants breached express promises concerning Plaintiff's sales territory, commission structure, and control over her business by sharing her client lists, stripping her commissions, and giving other employees control without cause. (FAC at 56.)  Plaintiff claims that Comport's actions violated their employment agreement and the implied covenant of good faith and fair dealing.  (*Id.*)

"To prevail on a breach of contract claim under New Jersey law, a plaintiff must establish three elements: (1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Mid-Am. Salt, LLC v. Morris Cnty. Coop. Pricing Council*, 964 F.3d 218, 226 (3d Cir. 2020) (citing *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013)).  To establish that a valid contract exists, a plaintiff must plead the following: (1) a meeting of the minds; (2) an offer and acceptance; (3) consideration; and (4) reasonably certain contract terms.  *Sheet Metal Workers*, 737 F. 3d at 900.  For employment agreements, "executed offer letters qualify" as contracts, but "a writing alone will not alter the at-will nature of the employment." *Acre Mortg. & Fin., Inc. v. Lang*, No. A-1385-21, 2024 WL 4686045, at *11 (N.J. Super. Ct. App. Div. Nov. 6, 2024).  "[I]n the at-will employment context, employers retain the authority to alter the terms and conditions of employment, subject, of course, to any statutory or common law limitations." *Id.*  "And the

20

employee's decision to remain employed, subject to the terms and conditions set by the employer, is deemed an acceptance of those terms." *Id.*

Here, Plaintiff's offer letter promised certain conditions regarding her territory, compensation, and autonomy. But Comport employed Plaintiff "at-will," and subsequently altered the conditions of her employment. (Comport Br. at 39.) Plaintiff concedes that she signed her demotion on June 20, 2023. (FAC ¶ 263.) Therefore, Plaintiff intended to remain employed and accepted Comport's new conditions. Because Plaintiff fails to show that Comport failed to perform its obligations regarding her at-will employment, she fails to plead a valid cause of action for breach of contract. Accordingly, Count XIII is **DISMISSED** with prejudice.

### g. *Defamation and Damage to Professional Reputation (Count XIV)*

In Count XIV, Plaintiff alleges that Comport made false and defamatory statements about her work performance, credibility, and motives. (FAC at 56.) Plaintiff further alleges that Comport Counsel Melissa Brown ("Brown") suggested, without any basis, that "Plaintiff fabricated evidence or engaged in inappropriate behavior" to "undermine Plaintiff's legal claims and sabotage her efforts to re-enter the industry." (*Id.*)

"To establish a prima facie case of defamation, there must be: '(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher.'" *Herman v. Muhammad*, 480 N.J. Super. 480, 492 (App. Div. 2024) (internal citations omitted). Under New Jersey law, there is a litigation privilege that applies to "all statements or communications in connection with the judicial proceeding." *Hawkins v. Harris*, 141 N.J. 207, 216 (1995) (internal citations omitted).

Here, the Comport Defendants argue that the litigation privilege shields Brown's statements from liability. (Comport Br. at 31-32.) Plaintiff argues that Brown's statements were malicious and extrajudicial falsehoods, which the litigation privilege does not protect. (Opp. at 8-9 (citing *Williams v. Kenney*, 379 N.J. Super. 118, 141 (App. Div. 2005)).) The Comport Defendants argue that Brown's statements are distinguishable from the counsel in *Williams* because they were "submitted to the Court through the docket or directed to Plaintiff's prior counsel who was representing Plaintiff in this dispute at the time of the communication." (Comport Reply at 9-10.)

The Court finds that any allegedly false or defamatory statements about Plaintiff's work performance, credibility, and motives are protected by the litigation privilege. Brown made such statements in furtherance of the Comport Defendants' defense in this litigation. (*Id.*) Therefore, Plaintiff fails to plead a valid cause of action for defamation and damage to professional reputation. Count XIV of the FAC is **DISMISSED** with prejudice.

### h. *Tortious Interference with Prospective Economic Advantage (Count XV)*

In her fifteenth and final Count, Plaintiff alleges that the Comport Defendants "took deliberate steps to interfere with her ability to work in the technology sales sector." (FAC.) She claims she had "positive business relationships with key accounts and vendors" that were "damaged or destroyed" because of Defendants' "fabricated narratives, tampered metadata, and abuse of process." (*Id.* at 57.) The Comport Defendants argue that Plaintiff fails to "identify any prospective employers to whom she applied or any business opportunities she had following her termination that she was denied due to this litigation." (Comport Br. at 40-41.)

There are two types of tortious interference claims in New Jersey: one for interference with an existing contract and the other for interference with a "prospective contractual relationship."

*See*, *e.g.*, *Nostrame v. Santiago*, 61 A.3d 893, 900 (N.J. 2013).  The elements required to plead each claim are similar.  To properly plead a tortious interference claim, a plaintiff must show: "(1) the existence of the contract [or a prospective economic relationship]; (2) interference which was intentional and with malice; (3) the loss of the contract or prospective gain as a result of the interference; and (4) damages."  *Amgro, Inc. v. Lincoln Gen. Ins. Co.*, 361 F. App'x 338, 345 n.9 (3d Cir. 2010).

The Court finds that Plaintiff fails to plead any plausible facts that the Comport Defendants interfered with Plaintiff's potential future employment.  Although Plaintiff notes her relationships with vendors and touches on her interview with "SHI" in her impact statement, (*see* FAC), Plaintiff does not allege that the Comport Defendants spoke to such contacts about Plaintiff—let alone interfered with malice.  Because the FAC is devoid of non-conclusionary allegations of intentional interference resulting in lost prospective business, Plaintiff fails to plead a valid cause of action for tortious interference with prospective economic advantage.  Accordingly, Count XV of the FAC is **DISMISSED** with prejudice.

## IV.    CONCLUSION

For the reasons stated above, Defendant HP's Motion to Dismiss is **GRANTED**; Defendant HPE's Motion to Dismiss is **GRANTED**; and the Comport Defendants' Motion is **GRANTED IN PART**.  An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:  Clerk
cc:    James B. Clark, U.S.M.J.
        Parties

23